**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | No. CV 06-2100-PHX-MHM |
| Plaintiff, ) | **ORDER** |
| v. ) | |
| $24,059.00 in U.S. Currency, ) | |
| Defendant. ) | |

Currently before the Court is the United States of America's ("the Government") unopposed motion for summary judgment (Dkt. #27) and motion to strike Darrell Avant's ("Claimant") response to the Government's request for admissions. (Dkt. #33). After reviewing the pleadings, the Court issues the following Order.

I. **Factual Background**

On March 9, 2006, Navajo County Sheriff's Deputy William Murray stopped two men driving a vehicle with a South Carolina license plate for a speeding violation. (Defendant's Statement of Facts ("DSF") ¶ 2). Claimant was driving the vehicle, and Chad Scott ("Scott") was his passenger. (DSF ¶ 4). Scott stated that the vehicle was rented in his name; the vehicle was rented in Omaha, Nebraska. (DSF ¶ 6).

Deputy Murray asked Claimant to step out of the vehicle; when Claimant stepped out of the vehicle, a clear plastic package fell onto the ground. (DSF ¶ 8). The package

1  contained marijuana. (DSF ¶ 14). Claimant stated that he and Scott were in Phoenix to
2  meet some friends for the weekend. (DSF ¶ 11). Claimant also stated that his friends
3  lived somewhere on Indian School Road, but that he did not know exactly where. (DSF ¶
4  12). When pressed, Claimant stated that he was going to meet a friend by the name of
5  Troy, but could provide no further information. (DSF ¶ 13).

6  Deputy Murray discovered that Claimant's driver's license was suspended. (DSF
7  ¶ 16). Claimant stated that his license was suspended because he failed to pay child
8  support. (DSF ¶ 17). Deputy Murray then requested that Scott exit the vehicle and
9  advised Claimant and Scott that he was going to search the vehicle. (DSF ¶¶ 18-19).
10 Deputy Murray asked Claimant and Scott if there were any drugs in the vehicle, and they
11 said "No." (DSF ¶ 19). In the trunk of the vehicle, Deputy Murray found a black nylon
12 bag, which contained a locked, blue nylon bank bag. (DSF ¶¶ 20-23). Claimant stated
13 that the blue nylon bag was his, but that he did not have a key and he did not know where
14 one was. (DSF ¶ 21). Deputy Murray took the blue nylon bag out of the black nylon bag
15 and placed both bags apart from each other on the ground (DSF ¶ 23).

16 Deputy Murray then retrieved "Kachina," his Certified Narcotic Detection Canine,
17 from his vehicle. (DSF ¶ 24). Deputy Murray and Kachina were certified as a team in
18 December 2005. (DSF ¶ 25). Kachina is trained to "alert" to the odor of controlled
19 substances, including marijuana, and any item recently contaminated with the odor of a
20 controlled substance; when Kachina locates the odor of a controlled substance, she is
21 trained to bite and paw and/or bark at the source of the odor. (DSF ¶¶ 24, 89). Kachina is
22 not trained to detect secondary items such as rubber bands, plastic bags, duct tape, or
23 other packaging items. (DSF ¶ 90). Further, Kachina has made approximately 500
24 narcotics alerts and has been correct over 90% of the time. (DSF ¶ 91).

25 Deputy Murray commanded Kachina to sniff the nylon bags, and when Kachina
26 sniffed the blue nylon bag, she immediately began to whine and paw at the bag. (DSF ¶
27 26). Kachina did not alert to the black nylon bag. (DSF ¶ 26). Deputy Murray
28 recognized Kachina's alert to the blue nylon bag as consistent with other narcotics odor

1  alerts that Kachina had given in the past. (DSF ¶ 27). Deputy Murray opened the blue
2  nylon bag and found bundles of currency wrapped in rubber bands. (DSF ¶ 28).
3  Claimant stated that the bag contained approximately $15,000 in cash; Claimant stated
4  that he intended to use the money to purchase a vehicle. (DSF ¶ 29). Claimant and Scott
5  were subsequently taken into custody and transported to the Navajo County Sheriff's
6  Office. (DSF ¶ 33).
7       At the station, the money that had been found in the blue nylon bag was removed
8  and placed on a table to be counted, and Deputy Murray was able to smell an
9  overwhelming odor of marijuana coming from the money. (DSF ¶ 36). Deputy Murray
10 has over 1,000 hours of training with a drug detection canine, has been involved in over
11 450 drug cases, and has had specific drug identification training. (DSF ¶ 36).
12      The currency seized totaled $24,059 in U.S. currency. (DSF ¶ 37). Claimant was
13 cited for driving on a suspended license, possession of marijuana, and possession of drug
14 paraphernalia. (DSF ¶ 38). Investigation into Claimant and Scott's criminal history
15 established that Claimant had been arrested and convicted for selling under 10 grams of
16 crack cocaine in 1993, and that Scott had been arrested for possession with the intent to
17 distribute 120 pounds of marijuana in 2004. (DSF ¶¶ 39-40).
18      During questioning at the Sheriff's Office, Claimant stated that he lived in
19 Nebraska and worked as a barber. (DSF ¶ 45). Claimant stated that he makes between
20 $15,000 and $20,000 a year, and spends approximately $1,000 a month on rent, utilities
21 and vehicle insurance. (DSF ¶ 46). Claimant again stated that the money in the blue
22 nylon bag was his and that he had saved the money from cutting hair. (DSF ¶ 48). At
23 this time, Claimant stated that there was approximately $20,000 in the blue nylon bag.
24 (DSF ¶ 49). In addition, Claimant again stated that the marijuana in the plastic bag was
25 his, and that although he liked to smoke marijuana, he does not sell it. (DSF ¶ 42).
26 Claimant also stated that his reason for coming to Phoenix was to "holler at a few of my
27 guys." (DSF ¶ 43).
28

During questioning at the Sheriff's Office, Scott stated that his reason for coming to Phoenix was to visit his girl. (DSF ¶ 51). Scott also stated that he was self-employed and worked as a concert promoter. (DSF¶ 52). Further, Scott stated that he did not know that there was money in the blue nylon bag, and that he had stopped smoking marijuana approximately two years ago. (DSF ¶ 53).

On November 16, 2006, Claimant was a passenger in a rental vehicle stopped for a traffic violation by a Colorado State Police Trooper in Denver, Colorado. (DSF ¶ 94). The Trooper noticed a strong odor of marijuana and the driver eventually informed the Trooper that there was a bag of marijuana under the driver's seat. (DSF ¶ 96). The Trooper subsequently searched the vehicle and found $24,080 in U.S. currency in the spare tire compartment, as well as numerous empty duffle bags in the trunk, one of which had a overwhelming odor of marijuana. (DSF ¶¶ 96, 98). The driver stated that Claimant had placed the bags in the trunk and that she did not know Claimant's name, but only knew him as "G40." (DSF ¶ 100). Receipts were found indicating that the vehicle had been in Phoenix, and Claimant had airline reservations for November 20, 2006, from Phoenix to Nebraska. (DSF ¶¶ 95, 101). Both the driver and Claimant signed disclaimers of ownership to the currency, and the money was administratively forfeited in March 2007. (DSF ¶ 102).

## II. **Procedural History**

On September 1, 2006, the Government filed a complaint seeking forfeiture of the defendant currency. (Dkt. # 1). On October 10, 2006, Claimant filed an answer to the complaint. (Dkt. # 11). On November 3, 2006, the Government served its request for admissions, and on December 1, 2006, Claimant filed a motion for an extension of time to file answers to the Government's request for admissions. (Dkt. #s 17, 18). On February 12, 2007, the Court granted Claimant's request and ordered Claimant to respond to the Government's interrogatories and requests no later than March 16, 2007. (Dkt. # 23).

1  On June 8, 2007, the Government filed the instant motion for summary judgment.
2  (Dkt. # 24). On June 11, 2007, Claimant's attorney filed a Notice with the Court stating
3  that he mailed the Government a copy of Claimant's response to Government's request
4  for admissions. (Dkt. # 25). On June 14, 2007, Claimant's attorney filed a motion for
5  extension of time to respond to the Government's motion for summary judgment. (Dkt. #
6  27). On June 20, 2007, the Court denied Claimant's motion for extension and directed
7  Claimant that he must file a response to the Government's motion for summary judgment
8  by July 9, 2007. (Dkt. # 29).
9  On November 6, 2007, the Court ordered Claimant to show cause as to why the
10 Court shouldn't deem as admitted the matters in the Government's requests for
11 admissions, and why the Court shouldn't grant the Government's unopposed motion for
12 summary judgment. (Dkt. # 30). On November 16, 2007, Claimant's attorney filed
13 another Notice again stating that he sent the Government Claimant's response to their
14 requests for admissions. (Dkt. # 31). In addition, Claimant's attorney filed an affidavit
15 stating that the delay in responding to the Government's request for admissions was due
16 to Claimant's unavailability during the previous year. (Dkt. # 32). On November 21,
17 2007, the Government filed a motion to strike Claimant's response to its request for
18 admissions. (Dkt. # 33).
19
20                    III. **Motion for Summary Judgment**
21 Summary judgment is appropriate when "the pleadings, depositions, answers to
22 interrogatories, and admissions on file, together with the affidavits, if any, show that there
23 is no genuine issue as to any material fact and that the moving party is entitled to a
24 judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment may be entered
25 against a party who "fails to make a showing sufficient to establish the existence of an
26 element essential to that party's case, and on which that party will bear the burden of
27 proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In determining
28 whether the moving party has met its burden, the Court views the evidence in the light

1  most favorable to the nonmoving party.  <u>Allen v. City of Los Angeles</u>, 66 F.3d 1052,
2  1056 (9th Cir. 1995).  The Court must not make credibility determinations or weigh
3  conflicting evidence.  <u>Musick v. Burke</u>, 913 F.2d 1390, 1394 (9th Cir. 1990).  Further, the
4  Court must draw all reasonable inferences in favor of the nonmovant.  <u>Gibson v. County</u>
5  <u>of Washoe</u>, 290 F.3d 1175, 1180 (9th Cir. 2002).

6        Summary judgment procedures must be construed in the light of the statutory law
7  of forfeitures, and the procedural requirements set forth therein.  <u>U.S. v. Currency, U.S.</u>
8  <u>$42,500.00</u>, 283 F.3d 977, 979 (9th Cir. 2002).  Pursuant to the Civil Asset Forfeiture
9  Reform Act of 2000, 18 U.S.C § 981 et seq., the Government carries the burden of proof
10 to establish by a preponderance of the evidence that the property in question is subject to
11 forfeiture.  18 U.S.C. 983(c)(1).  Specifically, when "the Government's theory of
12 forfeiture is that the property was used to commit or facilitate the commission of a
13 criminal offense, or was involved in the commission of a criminal offense, the
14 Government shall establish that there was a substantial connection between the property
15 and the offense."  18 U.S.C. 983(c)(3).  Thus, "the Government bears the burden of
16 proving that there is a substantial connection between the [property] and certain crimes."
17 <u>United States v. $32,000 in U.S. Currency</u>, 2007 WL 12970987 at *2 (D.Ariz. 2007).
18 Further, "[t]he determination of whether the Government has met its burden of proof is
19 based on the aggregate of the facts, including circumstantial facts."  <u>Id.</u> (citing <u>Currency,</u>
20 <u>$42,500</u>, 283 F.3d at 980).

21       If the Government meets its burden of proof with a properly supported motion for
22 summary judgment, then the burden shifts to the claimant to establish by a preponderance
23 of the evidence that the claimant is an innocent owner, i.e., an owner who doesn't know
24 of the conduct giving rise to forfeiture.  18 U.S.C. § 983(d).  The nonmoving party to a
25 motion for summary judgment may not rest on the bare allegations or denials in his
26 pleading, but must set forth specific facts, by affidavit or as otherwise provided by Rule
27 56, demonstrating a genuine issue for trial.  Fed.R.Civ.P. 56(e); <u>Anderson v. Liberty</u>
28 <u>Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986).  Conclusory allegations, unsupported by

1  factual material, are insufficient to defeat a motion for summary judgment. Taylor v.
2  List, 880 F.2d 1040, 1045 (9th Cir. 1989).

### A. **FRCP 36(a)**

"Unanswered requests for admissions may be relied on as the basis for granting summary judgment." Conlon v. United States, 474 F.3d 616, 621 (9th Cir. 2007).

Rule 36(a) of the Federal Rules of Civil Procedure states that a matter is deemed admitted "unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow . . .. the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter." Once admitted, the matter "is conclusively established unless the court on motion permits withdrawal or amendment of the admission" pursuant to Rule 36(b).

Rule 36(b) "permits the district court to exercise its discretion to grant relief from an admission made under Rule 36(a) only when (1) the presentation of the merits of the action will be subserved, and (2) the party who obtained the admissions fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." Conlon, 474 F.3d at 621. The text of Rule 36(b) is permissive, and "in deciding whether to exercise its discretion when the moving party has met the two-pronged test of Rule 36(b), the district court may consider other factors, including whether the moving party can show good cause for the delay and whether the moving party appears to have a strong case on the merits." Id. at 624, 625.

In this case, the Government served its request for admissions on November 3, 2006. Pursuant to Rule 36(a), Claimant had 30 days to respond by serving written answers or objections. Claimant, represented by counsel, filed a motion to extend the time allowed to respond under Rule 36(a). The Court granted Claimant's motion and extended the time allowed to respond by three months, setting the deadline on March 16, 2007. Claimant did not respond by the deadline and did not file any further motions for extension. Thus, pursuant to Rule 36(a) and Claimant's failure to serve any answers to

1  the Government's request for admissions by the Court's March 16, 2007 deadline, the
2  matters contained in the Government's request for admissions were admitted.

3  Three months later, the Government filed its motion for summary judgment based
4  on the admitted matters, and in the alternative on the merits.  Three days after the
5  Government filed its motion for summary judgment, Claimant's attorney filed a notice
6  with the Court stating that he finally responded to the Government's request for
7  admissions.  Claimant's response was untimely; the response was served three months
8  after the Court's March 16, 2007 deadline, and thus after the matters had already been
9  admitted under Rule 36(a).  Claimant offered no excuse for the delay and did not seek
10 leave of the Court to file a motion to withdraw or amend the admitted matters pursuant to
11 Rule 36(b).  In addition, Claimant didn't file a response to the Government's motion for
12 summary judgment.  So, on November 6, 2007, the Court issued an order directing
13 Claimant to show cause as to why the Court shouldn't accept the matters in the
14 Government's request for admissions as admitted and grant the Government's motion for
15 summary judgment.

16 In response, Claimant's attorney filed another notice with the Court again stating
17 that he responded to the Government's request for admissions.  Claimant's attorney also
18 filed an affidavit that essentially states that he's been unable to reach Claimant over the
19 past year because Claimant was "traveling" or was "out of town."  (Dkt. # 32).  The
20 affidavit does state that Claimant's attorney was able to reach Claimant and send him the
21 Government's request for admissions in April 2007, but then goes on to state that
22 Claimant's subsequent responses were incomplete, so Claimant's attorney tried
23 unsuccessfully to contact Claimant so he could adequately complete the responses.  (Dkt.
24 # 32).  Although unclear, it appears that Claimant is asking the Court to accept Claimant's
25 responses to the Government's request for admissions and not deem the matters therein as
26 admitted pursuant to Rule 36(a).  Thus, although the Court admonishes Claimant's
27 attorney for not abiding by the Court's deadlines and following the Federal Rules of Civil
28 Procedure, the Court nonetheless will construe Claimant's filings as a Rule 36(b) motion

- 8 -

1 to withdraw or amend the matters admitted under Rule 36(a).  As such, for purposes of
2 discussion, the Court will construe the Government's motion to strike Claimant's
3 response as a reply in opposition to Claimant's Rule 36(b) motion.

### B. **FRCP 36(b)**

The Court may grant Claimant's Rule 36(b) motion if both the following factors are met: (1) the presentation of the merits of the action will be subserved, and (2) the Government fails to satisfy the Court that withdrawal or amendment will prejudice the Government in maintaining the action or defense on the merits.  Conlon, 474 F.3d at 621.

The first factor is easily met.  "The first half of the test in Rule 36(b) is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case."  Hadley v. United States, 45 F.3d 1345, 1348 (9th Cir. 1995).  The Government's first request for admissions states "[a]dmit that the defendant $24,059.00 in US Currency represents the proceeds of the illegal trafficking in controlled substances or was used or intended to be used in exchange for controlled substances."  (Dkt. # 33, Ex. 1).  Thus, because the Government need only prove a substantial connection between the defendant currency and its involvement in a criminal offense to succeed on summary judgment, upholding the Government's first request for admissions as a deemed admission would eliminate any need for a presentation on the merits.  As such, the first factor of the test in Rule 36(b) is satisfied.

Under the second factor in Rule 36(b), the Government must satisfy the Court that withdrawal or amendment will prejudice the Government in maintaining the action on the merits.  In response to Claimant's attempt to have the Court consider Claimant's untimely responses to the Government's request for admissions, the Government merely states that the Court should not consider the Claimant's responses because they were "served several months after they were due, with no extension having been granted," and the explanations for delay offered by Claimant's attorney's "[do] not amount to good cause."  (Dkt. # 33).

- 9 -

1    In Conlon, the Ninth Circuit stated that "reliance on a deemed admission in
2 preparing a summary judgment motion does not constitute prejudice." 474 F.3d at 624.
3 Further, the Government stated that "[e]ven if the Court were to consider [Claimant's]
4 responses, there is still a basis for the Court's grant of summary judgment to [the
5 Government]." (Dkt. # 33). Thus, the Government would not be prejudiced if the Court
6 were to allow Claimant to withdraw the matters admitted under Rule 36(a). Accordingly,
7 both factors in Rule 36(b) have been satisfied; the merits of the action will be subserved
8 and the nonmoving party will not be prejudiced if the Court allows Claimant to withdraw
9 his admissions.

10   Nonetheless, "the text of Rule 36(b) is permissive." Conlon, 474 F.3d at 624.
11 Thus, even if both factors in Rule 36(b) are satisfied, it is still within the Court's
12 discretion to deny withdrawal. Id. at 625. The Court may consider other factors in
13 deciding whether to grant or amend requests for admissions, "including whether the
14 moving party can show good cause for the delay and whether the moving party appears to
15 have a strong case on the merits." Id.

16   In this case, Claimant has not shown good cause for the delay in responding to the
17 Government's request for admissions. The record indicates that Claimant did not serve
18 the Government with a response to its request for admissions until three months after the
19 Court set the deadline for Claimant to respond, which also happened to be three days after
20 the Government filed its motion for summary judgment. The only excuse offered for the
21 delay is that Claimant was unavailable to timely respond to the Government's request for
22 admissions because Claimant was either "traveling" or was "out of town." This is hardly
23 an excuse that constitutes good cause. Claimant has been represented by counsel
24 throughout these proceedings, and the Court already granted Claimant a three month
25 extension to reply to the Government's request for admissions. Claimant has not alluded
26 to any sort of serious medical condition or other emergency which would illustrate the
27 need for the relief requested. Thus, the Court finds that Claimant has not shown good
28 cause for the delay.

1      In addition, this is not a situation in which the Government used its request for
2 admissions to gain an unfair tactical advantage. Cf. Perez v. Miami-Dade County, 297
3 F.3d 1255, 1268 (11th Cir. 2002) (stating that Perez used Rule 36(a) "to harass the other
4 side . . . with the wild-eyed hope that the other side w[ould] fail to answer and therefore
5 admit essential elements"). Rule 36(a) serves "two important goals: truth-seeking in
6 litigation and efficiency in dispensing justice." Conlon, 474 F.3d at 622. As such, Rule
7 36(a) "is not to be used in an effort to harass the other side or in the hope that a party's
8 adversary will simply concede essential elements." Id. (quotations omitted). However,
9 that does not mean that a request for admissions cannot contain requests that go towards
10 the essential elements in a case; that simply means that a party should not be allowed to
11 use Rule 36(a) to request admissions without any basis in an effort to harass or trick the
12 opposing party into conceding essential elements in the case. Here, although some of the
13 Government's requests for admissions go to the merits of the case, the Government did
14 not try to harass or trick Claimant into conceding essential elements of the case. As
15 previously stated, Claimant has been represented by counsel in these proceedings, and the
16 Court afforded Claimant ample opportunity to consider and respond to the Government's
17 request for admissions. Claimant has simply failed to timely respond to the
18 Government's request for admissions and has not shown good cause for the delay.

19      Further, Claimant did not respond to the Government's motion for summary
20 judgment, and even if this Court were to consider Claimant's response to the
21 Government's request for admissions, Claimant does not appear to have a strong case on
22 the merits. In considering the Government's motion for summary judgment on the merits,
23 "[t]he determination of whether the Government has met its burden of proof is based on
24 the aggregate of the facts, including circumstantial facts." Id. (citing Currency, $42,500,
25 283 F.3d at 980). Notwithstanding the matters admitted under Rule 36(a), the aggregate
26 of the facts include the presence of a large sum of money; a sophisticated canine alert to
27 the presence of drug odors on the money; an overwhelming odor of marijuana on the
28 money; the fact that the money was in a concealed locked bag to which Claimant claimed

- 11 -

he had no key; the fact that Claimant was coming from Omaha, a narcotics destination city, and was headed to Phoenix, a narcotics source city; Claimant's multiple misrepresentations about the amount of money in the bag; Claimant's unsubstantiated and unsupported assertions regarding the origin of the money; an implausible story that Claimant simply drove from Omaha to Phoenix to "holler at a few if [his] guys," whose exact whereabouts and names he didn't know; an implausible story that Claimant was going to use the money to purchase a vehicle while he was in Phoenix; and the seizure of currency under similar circumstances less than one year later, where Claimant used a false name, a canine alerted to a drug odor on the currency, and the vehicle had an overwhelming odor of marijuana. As such, even if the Court were to allow withdrawal and thus not consider the admitted matters, the aggregate of the aforementioned facts by themselves appear to support a finding that the Government has established a substantial connection between the money and an illegal activity.

However the Court finds it unnecessary to make such a finding because Claimant has not shown good cause for the delay in responding to the Government's request for admissions and Claimant does not appear to have a strong case on the merits. Instead, the Court will exercise its discretion under Rule 36(b) and deny Claimant's motion to withdraw or amend the matters admitted under Rule 36(a). As such, the matters in the Government's request for admissions are deemed admitted pursuant to Rule 36(a), including the admission that the defendant currency represents the proceeds of illegal trafficking in controlled substances or was used on intended to be used in exchange for controlled substances. Therefore, based on the aggregate of the facts, including the matters deemed admitted in the Government's request for admissions, the Court finds that the Government has established a substantial connection between the defendant currency and an illegal activity. Thus, the Government has met its burden of proof on summary judgment, and the Court grants the Government's motion for summary judgment.

**Accordingly,**

1   **IT IS HEREBY ORDERED** that the Government's motion to strike Claimant's
2   response to the Government's request for admissions (Dkt. # 33) is GRANTED.
3   **IT IS FURTHER ORDERED** that the Government's motion for summary
4   judgment (Dkt. # 27) is GRANTED.
5   **IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment
6   accordingly.

DATED this 28th day of January, 2008.

_____
Mary H. Murguia
United States District Judge